Court, Daniel Collins, Munger, Tolson, Olson, on behalf of Appellant Philip Morris, USA. In this case, the district court committed a fundamental legal error in entering the stay, and that makes this, I think, an easy case. In applying the principle which was established in Strait and reaffirmed in Hicks, that adjudicative jurisdiction could follow legislative jurisdiction, Strait and Hicks and this Court's decision in the Burlington v. Redwolf case all confirmed that the focus has to be on the nonmember, so that if you were trying to assert adjudicative jurisdiction over a nonmember, you look at the scope of legislative jurisdiction over the nonmember. The district court did it exactly backwards by focusing on legislative jurisdiction over the member, defendant, finding that that, of course, existed and that, therefore, attached an ancillary adjudicative jurisdiction over the nonmember. That's simply a crossing of wires that finds no support in those cases and would have revolutionary implications. It would mean that. Well, the difficulty is that I don't think there's a case that presents this fact scenario, because when they're talking about jurisdiction over the nonmember, virtually every case is looking at the nonmember in the context of a defendant. And you have a nonmember plaintiff suing member defendants. So it seems to me you can't just use the word nonmember without at least putting it in context. I appreciate your comments on that. There are cases that have involved nonmember plaintiffs. Correct. The lead one in the Supreme Court is the Williams v. Lee case. Williams v. Lee. Which is a paradigmatic case of the first exception in the Montana framework. And also the Smith case, which is also put into the Montana framework. And then also the case of Stockwest is also a nonmember, although Stockwest is both nonmember plaintiff and nonmember defendant. But in that context, where the party is being asked to go to tribal court in lieu of its preferred either state or federal forum, the issue is whether or not there is authority in the tribe to require that choice to be made. And if that is going to be premised, as Strait establishes as an across-the-board proposition, that adjudicative jurisdiction cannot exceed legislative jurisdiction, then one would have to look at whether or not there is in any sense power in the tribe over PMUSA to require it to come to tribal court. Well, you've read our Smith case, of course. I have. Tell me why this case is so different than Smith. It's different from Smith because Smith places the case within the first exception to Montana because Smith chose the forum. The Court twice in its opinion places weight on the fact that it was a voluntary choice in full control of the forum, and therefore – and then it analogized that by making analogy between personal and subject matter jurisdiction in this context. It analogized that to a submission to jurisdiction. It recognized it was unusual to do that in the context of subject matter jurisdiction, which is why it was sealed. Well, I don't have Smith in front of me, unfortunately. But as I remember it, Smith also talked about finding that the Indian agency, the nation's – the school had been the tortfeasor, and there was an interest in the tribal system to protect that – to protect the tribal system. So they went a little bit further than who chose the forum. Now, you're saying that we should look at Smith and find that the only interesting thing or the only determinative factor is when the moving party decides to choose the tribal court. That'll finish the argument. I think that – well, Smith says you have to look at two factors. You look at the status of the nonconsenting party and you look at the location. The real defendant. Yes. But now, when it gets to the ultimate holding of the case, because it goes through and analyzes the complexities of this because it's dealing with an unusual context, it ultimately places the case in the first exception to Montana because of the consent, the voluntary choice in electing that forum, tribal court. Having filed its claims there, Smith was not in a position to then challenge that. They analogized that to the sort of legislative accession to jurisdiction that the first Montana exception describes. And that is the holding of the case. It does not suggest that there's an independent interest that could justify having brought Smith in absent his consent. That would have been a very different case from Smith, and it doesn't address that. The unfortunate part of that argument is that Smith didn't bring the case there. Spitz was drawn in, and it was – I think you have a good argument, but as I remember, Smith, from memory now, it starts out by the deceased in the truck, and they're the state bringing a wrongful death action against the school. The school then cross-claims in, as I remember. I'm sorry, I don't have it in front of me. They brought in Smith, and then Smith filed his counterclaims. That's exactly right. Okay. Now everybody else settles out, and then the tribal court rearranges the party and puts Smith as the plaintiff in the action. So if that's what you think Smith held, I'll have to go back and reread it. It is what it held, and it is unusual in the sense that having placed so much weight on the voluntary nature of it, it did start as a counterclaim. But the reality is that he filed the counterclaim, never objected to the jurisdiction. Well, it was probably a mandatory counterclaim. He was stuck in the jurisdiction. What was he going to do? He couldn't walk out. But nonetheless – And he was sued for his alleged torturous actions. So, I mean, I think that – I will read this specific language again, but I – I would refer the Court. I quote the language in footnote 11 of the brief in discussing the Smith case, where it says, a plaintiff, quote, in full control of its claims, close quote, has voluntarily submitted to a tribal court's adjudicate of jurisdiction by virtue of having, quote, chosen to bring its action in tribal court. That, even though it recognized the unusual procedural history, that is how Smith characterized the case, as a submission to adjudicative jurisdiction. But once you realize that the – that the district court crossed wires and that it should have focused on jurisdiction, legislative jurisdiction, over PMUSA, then the case is an easy case. The crosswire – The formula of adjudicative jurisdiction cannot be broader than legislative jurisdiction is a very familiar formulation. It shows up at the founding. You see it basically in the Federalist Papers, saying that the adjudicative jurisdiction of the Federal courts cannot exceed the legislative jurisdiction. In that setting, it's proved to be a fairly dramatic overstatement. The Federal courts have jurisdiction over lots of cases in which they don't have legislative jurisdiction. You know, we have diversity cases and so on. And I think it's similarly an overstatement here. That is to say, tribal courts have unquestioned jurisdiction over lots of cases involving application of law that's not tribal law. So that formula by itself, I think, doesn't get us very far. I think we've got to get back down into the fine grain of all these distinctions that the Supreme Court has drawn, redrawn, and blurred for us. Unfortunately. I wish the law were clearer. Well, it is a clear holding in Smith. It's a clear statement. And in Hicks, they do state that. That's a statement. I understand that. Now, it may be that the law, the choice of law issue may be a little bit different, but it has to at least be possible. There must be some power for the tribe to have asserted legislative jurisdiction. It may be that if they had legislative power, when they turned to the actual adjudication that would thereby be permitted, the choice of law issue may arise and the choice of law may be different. But that is the clear holding of Strait and Hicks. And I think that's it. Well, you know, when we say the clear holding of Strait and Hicks, I guess your mind must be clearer than mine, because here's the difficulty I have. With Hicks, the Court, like it did in Montana, said it was looking at a very narrow question. So I have trouble, given that backdrop and given the whole question of color of State law and those issues that arose in Hicks, from divining much of anything from Hicks that is applicable here. Now, you say that it's clear. What part of Hicks, given where the Court says this is looking at the narrow question, what part of Hicks is quite so clear? There are two aspects in which I think Hicks is relevant here. Your Honor is referring, I think, to the comment in footnote 2, where the Court indicates that it's addressing the issue of suits over nonmember defendants in a specific context. It recognizes that it has left open, as it did in Strait, the issue of jurisdiction over nonmember defendants generally. And then it says we're not addressing that broader question. That's where it places a narrowing loss on its holding. But in terms of how it gets to the Montana framework, what Hicks does is it picks up Strait's rule saying that adjudicative jurisdiction can't exceed legislative jurisdiction. Legislative jurisdiction is governed by the Montana framework. It turns to the Montana framework and then analyzes the case in that context. That analytical model, that framework for analyzing the issues, governs this case. At the very first step of that, in adjudicative versus legislative jurisdiction, the district court just approached the case backwards. It just focused on the wrong question. It can't be that it's sufficient that there's legislative jurisdiction over King Mountain, and then, therefore, anyone who has a claim against anything it has done wrong, it has to come to tribal court. It would be the most vast expansion of tribal court jurisdiction that really, if you take it seriously. So. But starting there, I mean, all of this, I guess, you know what I think it all boils down to? It boils down to how you define jurisdiction over a nonmember. Because if, as you frame it, the jurisdiction over the nonmember means even a plaintiff who must sue in tribal court involving members, then you're correct. But if the jurisdiction over the nonmember is really talking about when nonmembers are subject as defendants of the authority, then it's a different question. So it seems to me that it's all to go off and figure out what any of these cases mean is a, first, a linguistic determination of what does it mean to have jurisdiction over a nonmember defendant. I don't think that the rule about adjudicative jurisdiction following legislative jurisdiction can be limited just to the nonmember defendant context. There's certainly no suggestion in Hicks or Strait or in Smith, for that matter, that that is true. But once you recognize that the district court applied the wrong test. Well, forget the district court in the sense of it's a legal issue here, which we have to figure out what the right test is. Doesn't it always, your application of the cases relies on you characterizing your client as a nonmember defendant, in effect, in court? No. We have, I mean, certainly there, that's an alternative way of looking at it because they did file a tribal court action. But we've looked at the case and suggest the case should be looked at as a nonmember plaintiff case, which is what it is. Right. And the nonmember plaintiff cases that we have in hand are two or three. Williams versus Lee being the most significant one. Williams being the most significant. It's treated as the paradigmatic case of the first category. I mean, it also makes clear the handful of cases that we have all indicate the Montana case. I mean, every case involving a nonmember plaintiff, and there aren't that many of them, but all three of them apply the Montana framework or are viewed, Williams being a predecessor, but it's been given as the Supreme Court's paradigmatic case. I was wrong on, as you know, on Smith the first time around until the bank court came around and told us what we were supposed to do. But you just said something now that again triggers me. I'm going to have to go back and read all this again. You said this is a nonmember case, nonmember plaintiff case. That's correct. Okay. That throws me back into the Smith and Bank decision. Clearly, Judge Bybee said, first and most important is the party status of the nonmember, that is, whether the nonmember party is a plaintiff or a defendant. Now, what he did was a very interesting thing. When he found that the – and if we put all this together, he wanted to find where the true defendant was. If you look at all the cases, we have to look for the true defendant. The true defendant here was Mountain because they were originally sued in the defense. If you stop there, if you stop at the federal court and say, well, the plaintiff, the defendant was Mountain, that carries over when Mountain goes in to seek jurisdiction. And if we look at the standard that we're looking at, colorable claim, and if you determine that they're in fact the true defendant, they in turn be the defendant or the party not moving or the opposed party in the tribal action. Now, if you get away from that, then I can see where you're going. I'm still hung up on the other way. I'm trying to sort my way through what our Smith case did relative to determining the nature of each party. Well, Smith says you have to look at the two factors. It had indicated that the Supreme Court had never held that there was jurisdiction. Who's the tortfeasor here? The tortfeasor here is King Mountain. Exactly. And who's got the interest in the tortfeasor? It's the tribe has the interest in what's going on with that tortfeasor, who is a tribal corporation, has their headquarters there, distributes from there. And where is the interest when you get down and determine whether there's any tribal jurisdiction? But that's not sufficient to require nonmembers of the tribe to come to tribal  All we're doing here is spaying the proceeding in the Federal court. It doesn't go anywhere. The question is, is there enough colorable claim to let the tribal court determine first of all if they have jurisdiction, then they can rule, and if they don't, that will be reviewed again at the district court when it comes back. I don't think that the standard is, in fact, colorable claim. That was the phrase used in Stock West. But recall that there were two expansions of the the Supreme Court has expressly described as expansions of the exceptions to tribal jurisdiction in Strait and Hicks. Hicks says that Strait expanded it by adding this exception about when it is plain that there is not jurisdiction. Now, then Hicks actually finds that the particular phrasing that Strait used in that context didn't actually apply to Hicks, and so they expanded it further and said essentially that whenever it is the court, it's clear to the court that the jurisdiction doesn't exist, and going back to tribal court would just be delaying. But what is so clear that says that tribal jurisdiction doesn't exist? I think that the question is when you analyze the jurisdictional issues within the Montana framework, it's clear that neither of the exceptions applies. What is clear? I mean, factually and legally, what is so clear? It is clear that there are marks in interstate commerce. They are in New York. They are on the Internet. That is an injury to Philip Morris that's redressable under Atlanta. But what facts in the record do we have to do? Then you're throwing out the colorable claim, too, at the same time. That, it is, those facts are undisputed. There is, if you plug that into the Montana framework, there cannot be tribal jurisdiction. Well, if that's the case, then why were they sued with the jurisdiction in Montana? You could have sued them in New York, but you sued them where their corporate headquarters were, in the tribal jurisdiction. We could presumably have sued them in another jurisdiction. We chose this jurisdiction. So what difference does it make if they do have interstate contact? It makes an enormous difference, because that is the gravamen of our claim. And there can be no question, the Atkinson case says very clearly, there can be no tribal jurisdiction outside of the reservation boundaries unless you invoke one of the Montana exceptions. Sotomayor, that's true. But that, you know, that's true of the State of Washington. So you take a trademark case, take a Section 43A case, you file it in State court against Washington Corporation A. And the, you've got personal jurisdiction, you've got subject matter jurisdiction. The Washington court says, and Philip Morris comes in and says, look, these guys are making these cigarettes, they're popping up all over, they're popping up in New York, interstate commerce. The Washington court enters an injunction against Washington Corporation A. It says, you know, you hereby are enjoined from forever, you know, implicating or duplicating or replicating the Philip Morris packaging. That is an injunction from Washington State against its resident. What would be the difference if a tribal court says against King Mountain, a tribally authorized corporation, that it may not sell these cigarettes with this packaging, period, it may not, period, the end, no, anywhere? The question isn't whether the tribal court has sufficient ability to disable the plaintiff. Again, if that were true, then any claim of any kind against any tribal defendant would always have to be brought in tribal court, because that's always going to be true that the tribal court is going to be able to have power over its entities on the reservation. But where the conduct is in interstate commerce, there can be no assertion of tribal jurisdiction outside of the Montana exceptions. The Montana exceptions are not going to apply when we're talking about specialty sales in New York. Ginsburg. That doesn't really quite answer my question, so I just want to go back again. You're saying that because it's interstate commerce, that the tribal court could not assert jurisdiction. Is that? That's correct. The Atkinson case says that outside of the Montana framework in footnote 12, unless you can invoke one of the exceptions, there can be no assertion of tribal jurisdiction outside of reservation lands, period. Are you seeking a remedy, if your suit were allowed to go forward in Federal district court, against behavior of selling cigarettes, not now in New York, but with respect to sale of cigarettes on the Yakima reservation? That we've focused our injunctive remedy on the conduct as a whole. There hasn't been a specific inquiry into whether or not. Let me ask you more specifically. Are you asking for relief that would include an injunction against selling cigarettes in the packaging that exists at the time of the lawsuit against sales on the Yakima reservation? The injunctive order that we submitted would cover everything, I can tell you. I think the answer is yes. If it makes a jurisdictional difference, I'd like to have the opportunity to make that decision. I'm very serious. On a remand, I'd like the opportunity to make that decision. But at the moment, you're seeking that relief, among other things. What was the order presented to the district court had no carve-out. That is correct. Is there, in your view, does it matter at all that Phillips is selling onto the reservation and that, at least as framed now in the broader sense, that you have arguably products that are infringing against the Phillips Morris products that are sold on the reservation? It would be relevant to the first Montana exception analysis, because it looks at whether or not there's a commercial relationship with tribal members. I would note that their entire argument was based on Montana not applying. They never invoked the exceptions below. Those arguments were waived by not being raised below. We have argued in an abundance of caution that that's not enough. It can't be that just because Marlboro products are sold on the reservation and there are some contracts with some retailers there is sufficient to give the tribal court jurisdiction over Lanham Act infringement occurring on the Internet nationwide. I mean, it's an odd thing, because the relationship between Marlboro and the reservation is with third parties, not with these defendants, correct? There's no direct relationship between those parties and these defendants, at least as alleged. There's no voluntary relationship of any kind. The entire relationship with King Mountain is involuntary, and any relationship or the nonrelationship, if there had been no relationship with anyone on the reservation, the infringement and harm would be exactly the same. Do you think, in your view, they keep citing Williams v. Lee. Do you think it has any traction beyond as a first exception to Montana? I don't think it does. That's how it has been characterized by the Supreme Court as a paradigmatic first exception case, and it is. And it doesn't exceed the gloss that the Atkinson case puts on it, that you basically, if you're going to invoke a voluntary relationship of the Williams v. Lee sort, it's not in for a penny and for a pound. It has to arise out of that specific relationship. In Williams v. Lee, it was a trader on the reservation had a sales contract with a loan provision with a member and then was enforcing that contract against that member. The entire transaction arose on the reservation. That's quite different from what is at issue here, and I don't think it provides any basis for going outside of the Montana framework or for applying the first  Sotomayor, I just have one last question. If we go back to the language from Strait and Hicks, when it is plain or it's clear that jurisdiction does not exist, you know, you make that decision. We have a situation here which doesn't really fit, if in our view we didn't really think it fits in all these land and other distinction that the courts tried to make in Strait and Montana and et cetera. Would we then, out of comedy, need to uphold the stay? No. They make they argue at great length that unless the issue is kind of already decided, sort of a qualified immunity type standard, that therefore there has to be  Now, as I was saying earlier to Judge Brunetti, the colorable question standard was used in Stock West, but the Court has since, at a time when, prior to Strait and Hicks, in Strait and Hicks the Supreme Court has expanded, expressly stated it's expanding the exception in Strait and Hicks. And in Strait and Hicks, essentially what it says is that if you can tell that the jurisdiction is lacking, if the issue can be decided now, it should be decided now, because it's a waste of time to send it to tribal court. It's going to come back for de novo review. You'll throw the whole thing out under Wilson v. Marchington, which says that if there's no jurisdiction, it has to go. And then cases such as County of Lewis, the King case, Burlington v. Redwolf and Fox all apply that kind of analysis where they do the jurisdictional question first, see that they can resolve it, and then say there's no exhaustion. They don't talk about colorable question. It's never mentioned in any of those cases. That, I think, is the sensible analysis, practical analysis set forth by the Supreme Court, if you can resolve the question now and this one can be resolved now. It's not just there's legal argument. Kennedy, I don't read the deference principle the Supreme Court gives us as the equivalent of summary judgment, that is to say if there's a factual question affecting jurisdiction, you send it to the tribal court. If there's a legal question affecting jurisdiction, decide it yourself. As I read the deference principle the Supreme Court has given us, it extends to questions where the uncertainty may involve questions of law. Do you disagree with me on that? I disagree with you to the extent that there isn't an issue of tribal law. In the Natsosi case, they indicated that part of the deference came from the issue of there being tribal law being relevant to the jurisdictional issue. Natsosi said, well, that doesn't matter here because we're talking about inherent authority and tribal law isn't relevant to that question. It's governed by the Montana Act. Kennedy, your argument is even if Federal law on the question of tribal court jurisdiction is exceedingly complicated and somewhat unclear, if it remains purely a question of Federal law, we don't defer to the tribal court for an initial determination of jurisdiction? That's correct. That's your point. You analyze that question. Answer the question. Because you're just going to decide that question de novo after and it comes back. Well, maybe, if it comes back. That's the analysis that's done in Strait and Hicks. They do the jurisdictional question first, get to exhaustion, say we've resolved the issue. It was exactly what was done in the four cases from this Court that I referenced. That's how they analyze it. It's not enough that there were arguments on both sides. That doesn't get you to tribal. I take it you're leaning heavily on the fact that this is a Lanham Act case. Yes. We have an alternative argument to everything else that we've discussed already, that based on the Hicks case, a Lanham Act case, even if you could meet the Montana test, the Lanham Act claims cannot be heard in tribal court, period. And the other thing is, you don't think that our jurisprudence, you're strictly sticking to Supreme Court jurisprudence. Our latest Smith case has no relevance to this case. To the extent it is, it's clearly distinguishable because of its emphasis on the voluntary But I do think it supports the analysis here, because in two respects, it identifies the importance of the fact that the nonmember is the nonconsenting party. That is a factor it weighs in our favor. And then it looks at the locus of the wrong, and that here is outside the reservation, because in trademark cases, it's where the passing-off occurs. So I think the framework in Smith is actually supportive, even though it's factually quite distinguishable. Thank you. Thank you. We'll hear from counsel for King-Mountain. Good morning, Your Honors. May it please the Court. My name is Michael Keyes of Kirkpatrick & Lockhart, Preston Gates Ellis, on behalf of Appalachia King-Mountain. With me at counsel table are my partners, Teresa Keyes and Barb Friedman. I'd also like to introduce to the Court Mr. Delbert Wheeler and Mr. Kip Ramsey, who have come from the Yakama Nation to be here with us today. Your Honors, Mr. Collins characterized this case as an easy case. I submit that the only thing easy about it is Philip Morris's burden, which is it must show that the Yakama tribal court plainly lacks jurisdiction over this matter, and it's failed to meet that burden for several reasons, and I'm going to explain  I'd like to start off with the last point that Mr. Collins made about the supposed lack of ability to adjudicate a Federal claim. This Court's decision in Sharper disposes of that argument entirely. In Sharper, recall, it was a claim regarding the Family Medical Leave Act. The argument was that no exhaustion was necessary because this is a Federal statutory claim. As a matter of fact, the briefing in that case makes the exact same argument that Mr. Collins just made. This is foreclosed by Hicks. Tribal courts are no longer confident, no longer able to adjudicate Federal statutory claims. I mean, this Court has to be able to do that. You kind of put that at the bottom of his arguments. Yes. I was just – I was addressing that first and foremost in my mind. And I'm happy to expound on that, but I'm happy to go back to talking about Montana and Strait. Before I leave the Hicks issue, though, the related issue that he brings up more so in the brief Senate oral argument this morning is the supposed unconditional right to a Federal forum for a Lanham Act plaintiff. I point the Court to Section 1121a that was cited by Philip Morris. That section talks about the district courts and territorial courts. Judge Whaley cited in his decision in the Lanham Act, Section 1116, that talks about the several courts that have jurisdiction can enter an injunction under the Lanham Act. So embedded within the Lanham Act itself, we have reference to district courts, territorial courts, and the several courts. And from this, Philip Morris defines a congressional intent to limit Lanham Act claims to Federal courts only. That just doesn't hold up. I'd go to Montana and Strait. First of all, it's not clear if Montana and Strait and that line of cases actually applies here. Montana itself limits the holding to cases involving nonmembers, the conduct of nonmembers on non-tribal lands. In Montana, the analytical framework that it created, it's pretty clear about that. The inquiry, the focus is on the conduct of the nonmember and whether the tribe has regulatory jurisdiction over that nonmember on tribal lands or non-Indian fee lands. That's not the situation that we have here, not at all. We have a case where Plaintiff Philip Morris, a nonmember, brought a cause of action against two tribal members and their tribally licensed and owned business for a tort, alleged tort, that commenced on the reservation. There's not a dispute, is there, as far as I don't think it's needed to be. The tort was committed on tribal lands. The alleged tort was committed on tribal lands. The alleged tort, excuse me. How do you – well, just to stop there, isn't this, in the sense of Lanham Act, that the tort is broader than that? Isn't it an ongoing tort that, while it may have been committed on tribal lands, it was also in interstate commerce in connection with any other sales or packaging that King Mountain has out there? Potentially, yes, Your Honor. Well, why do you say potentially? Well, yes. It could be that there are other sales that are taking off or taking place off reservation. There's some evidence regarding sales. I thought it was clear that this was Indian-to-Indian sales, as far as you're concerned, from one of the smoke shops in the other tribes. That's absolutely correct. And that was interstate commerce. And counsel leaned on that very hard, as you know. Right. And let me point out that I believe that that argument that he makes is foreclosed by what this Court said in Smith. And Smith said, we don't look to precisely when and where the alleged tort took place. The inquiry is whether there is some direct connection to tribal land. And we certainly submit that on this record, it does, for several reasons. One, Judge Brunetti, as you pointed out, they brought the case in the Eastern District of Washington. I point out that paragraph 7 of the amended complaint alleges that a substantial amount of the activities took place in this district, Eastern District of Washington. That really – I've lived with Smith a long time. And that really hit me, because once you select where you're going to bring the action, and then if you go to Smith and read the language about it, you take a look at what the party – who the parties are and what their true relationship are. I don't know what we can do with Smith. It's an in-bank case. We have to follow it. And so I take it that you think that we should first start out this analysis, whether it's Montana or whatever, with the parties and who they are. Is the tribe the true defendant? Yes. Yes, it is. They were the first ones sued in the Federal Court. That's correct. Now, counsel doesn't seem to have much to do with the colorable claim. Do we need a colorable claim analysis to go from there when we try to analyze whether or not there should be tribal jurisdiction? Your Honor, the standard is whether jurisdiction is plainly foreclosed by existing law. I think Strait makes that clear, that exhaustion is not necessary if the Court's convinced that it's clear. And could you say that's sort of like colorable claim? We say that under the Stockwest, that standard is still viable. Stockwest makes that clear. Well, you know, I guess a lot of this kind of swirls around because, you know, Smith, to the extent it's relying on Williams v. Lee and others, that there is a more fundamental connection with the reservation. So, for example, in Williams v. Lee, they say it's immaterial that the, in effect, the plaintiff is not an Indian. He was on the reservation and the transaction with the Indian took place there. So the one place where I have pause with your argument is that every time I read one of these cases, the transaction between A and B, in the few cases where we have a non-Indian versus a member, there is a relationship between A and B. This case is the opposite. We have no relationship between A and B. Well, we actually do have a relationship here, Your Honor. We have submitted several declarations showing that Philip Morris has come on to tribal lands and actually has engaged in contractual relationships with various vendors on the outlying reservation. Absolutely. But, okay, let's stop right there. I mean, that was precisely one of my questions. They, I mean, I take for a given that Philip Morris is selling to tribal or other stores that are now selling these cigarettes on tribal land. But that is not a relationship between A and B, between King Mountain and Philip Morris, is it? Well, Your Honor, it's sufficient for purposes of jurisdiction for two reasons, and let me explain why. First, let me just footnote and say it just seems odd to me that you could, for jurisdiction purposes, rely on their other activities, in effect, to find jurisdiction in this circumstance. Your Honor, we make that argument under, first of all, we posit that it's not exactly clear if Montana even applies, if we have to fit within the two, within the two exceptions set forth in Montana. But I note that what this Court said in Smith, and Smith was really grappling with this issue of jurisdiction. Of course, it's been acknowledged by William Canobie and others that this is one of the most vexing issues of all of Indian law, jurisdictional issues, and I think Smith really bears that out. But what Smith did is he went through and really analyzed and really tried to synthesize Montana, Strait, Hicks, and come up with some sort of unifying principle as to how can we assess whether there's jurisdiction of a tribal court. And this is what Smith said. First and most important, after the analysis, is the party status of the nonmember. That is, whether the nonmember is the plaintiff or defendant. The Court then went on to say there's also, the Court has given some store to whether the activity arose on tribal lands. Kennedy. We'll stop there, right there. Yes. That was the most impressive thing I thought that happened in our Smith litany, is the fact that all of a sudden we identified that the parties were more key versus the status of the tort, if you will. In Smith, the tort was not on Indian land. And so by doing that, though, I don't think it limited it. What it was saying was, I'm analyzing all, if we were correct, I'm analyzing all these cases and where we've looked around at the land, at the parties. We think we start with the parties. Now, that's our embankment case. So you would have a start there. That's correct, Your Honor. Absolutely. We believe that is the start point. Is your rule then, would your rule then be that any time someone has a complaint against a tribal corporation, tribally licensed corporation, that you have Indian that you have tribal jurisdiction? Not necessarily. Why not? I think the rule would be this, that so long as the plaintiff is a nonmember, suing a member for conduct that arises or commences on tribal lands, the court of first resort is the tribal court. And here's why. Because the Supreme Court has created this doctrine that really wants to give deference to tribal courts so they can start really adjudicating issues and being able to develop their own jurisprudence regarding the conduct that should be asserted against their members. I think after our Dura-Arena case, the Congress came around and said, no, we're going to have tribal jurisdiction. I mean, that's been firmly established. Whether you want to fight with it or not, it's been firmly established. And, Your Honor, I think footnote seven in the Nostosia case from the Supreme Court really bears that out. And it said, just back in 1999, that under normal circumstances, tribal courts, like state courts, can and do decide questions of federal law. Well, and I guess what's troubling about these cases, we can't ignore the comedy and sovereignty that comes along with that. Once the Supreme Court and Congress finish battling it out, and Congress says, look, tribal courts are going to have jurisdiction, then we have to look, what does that comedy and sovereignty mean? And I think that Smith tried to do that. I don't know where we go, but I think Smith tried to do that. That's our latest expression, I think. I think that's exactly right, Your Honor. That Smith really did, as I said, grapple with that issue of comedy and trying to have jurisdiction over particular claims. And it did its best to really analyze the cases, kind of a development or analysis of the development of the cases. But what do we do with this interstate argument, though? Your Honor, look no further than Stockwest and this Court's opinion in Smith. Recall that in Stockwest, there was a significant amount of on-reservation conduct. But in that case, Mr. Taylor, the lawyer, took his legal opinion and delivered it across state lines, went into Oregon. Unambiguously off-reservation territory, that's where the tort occurred. Nonetheless, this Court said, under these circumstances, a significant amount of the activity took place on tribal lands. That's where he researched it, so on and so forth. There's a colorable claim, a colorable question as to whether a tribal court can adjudicate that claim. And that's such a ---- I guess that one of the other difficulties I have is that all of this, or at least the Smith cites Williams v. Lee and tries to characterize it. But whenever Williams v. Lee is cited by the Supreme Court, it's in the context of the first exception to Montana. So it's not clear to me that we don't start with Montana and that Williams v. Lee doesn't somehow hang out there by itself. Why don't we look at the Williams v. Lee situation in the consensual context of exception number one? I think you look at Williams v. Lee for the purposes as announced by this Court in Smith. And again, it's illustrative of the example of how the Supreme Court is really focusing on human relationships as opposed to land ownership. Right. But Philip Morris has no human relationship with your client. In fact, they don't want to have a relationship with your client. That is the opposite. That's clear from the record. That's clear from the record, that there seems to be some animosity and certainly disagreement over the depiction of the mountain and the trademark. So that – is there any case that you can point to where there is no direct relationship between the plaintiff and the defendant? Absolutely. Look at this, the recent withdrawal in the Ford case. Recall that Ford dealt with the situation where a Navajo officer was injured in a rollover accident involving a Ford Expedition. Now, there was a relationship between the tribe and the – and Ford regarding the purchase of the vehicles. But as far as the actual products liability issue was concerned, the original Totochine court said there's not a consensual relationship there for purposes of Montana. And that was withdrawn. Exactly. So that's what we have here, Your Honor, that it's not clear exactly the balance of power. Let me ask you this, if I may. Your adversary, toward the end of his oral argument, suggested that the clarity or lack thereof that would allow the district court to require exhaustion of tribal courts has to be somehow a factual lack of clarity. And if the only lack of clarity is that the law is not entirely clear, that no deference or abstention is required, is that right? That's not right, Your Honor. And I would point the Court to Iowa Mutual and National Farmers. It's clear from the Court's statements in those cases that really this whole doctrine, this comity doctrine, this prudential doctrine, is so that the tribes can really grapple with these issues of whether they have jurisdiction over a particular issue. Even if the issues of jurisdiction in the particular case are purely legal issues. That's right. That's right. And even if, because at the end of the day, tribal court jurisdiction is a question of Federal law. So, of course. I read National Farmers the same way you do, and National Farmers is the citation the Supreme Court gives in Strait. So I have to say, I don't see a basis for the distinction that was drawn in questioning at the end of the oral argument by your adversary. And moreover, Your Honor, Strait said, we are not, we're consistent, and Montana is consistent with the prudential doctrines announced in Iowa Mutual and National Farmers. So Strait doesn't somehow eradicate or get rid of this whole comity doctrine. Quite the opposite. The Court was very clear in that, that it's alive and well. Exhaustion is still necessary. Even if there are questions. It seems as though in whatever we do here, that that comity argument keeps slapping me in the face, because if the tribe has an interest in their entities, the tribal entities in this case, it would be Mountain, because they license them, they're a tribal corporation. They operate on the tribal lands, and they're selling the tribal lands. If they have an interest, and if we're going to recognize comity, if you parallel that to what we do with the states, somehow you've got to be able to recognize that. And it seems as though the legal decisions put us there. Judge McEwen's question is very troubling, though, because there is no direct contact. But we still have that tribal interest, which then relates to this comity. So I assume that's where Smith kind of helps a little bit in the analysis, a bit. But I'm still troubled with that, this factual thing. And let me reiterate about the withdrawal of the Ford opinion, Your Honor, because I think that also factors in and should give you some comfort. In that case, initially this Court decided that there wasn't a sufficient consensual relationship between the parties. But then that was withdrawn. And this Court mandated that exhaustion take place, because it's not clear as to whether Montana would foreclose jurisdiction of the tribal court in that case. Do you have any other cases? You know, most of these cases that we're talking about could be described as single incident cases generally, you know, a purchase, a car accident, a phishing right, or, you know. Are there any other cases where you have what would be characterized as a continuing tort? Your Honor, I can't think of any right offhand. You're exactly right. I think they tend to be, have kind of a one-shot deal. The tort occurred, and then it's a question of whether the tribal court can adjudicate it. But, Your Honor, it's so much more the reason to require exhaustion here. I mean, tribal courts need to be able to grapple with these issues and really develop their own body of jurisprudence as to whether they have jurisdiction over a continuing tort. Going to that, and going back to comedy again, if this operation is on the reservation, and we know at least it's business control, warehouse storaging, whatever, and let's assume that we talk about the continuation of the interstate sales to others, we still have the major operation, the head of the operation, sitting there. So if the tribal court has jurisdiction and determines what it can do with this alleged tort fees, then once that's through, it's still going to go upstairs and go back after this day is lifted so that the district court can take another look at this jurisdiction, see what the tribal court did, and run the federal case, if you will. So it seems to me that we're in a bifurcated situation. We give the comedy to the tribal court. After that's over with, we can then deal with maybe the continuation. I don't know any case that says that, other than the fact that there is a subsequent review. You're absolutely right, Your Honor. There's not only will you preserve comedy, but you'll also have another chance to look at the determination. Iowa Mutual makes that clear. This Court's decision in FMC says we're going to look for clear error regarding factual findings, and we review legal issues de novo, much like this Court does of a district court opinion. It seems the symmetry is there. If we follow that reasoning, the symmetry is there, because the tribal court gets all it wants, but it's never going to get more than it's entitled to if it's federally reviewed at the last stage under the Lanham Act. That's absolutely correct, Your Honor. If we analyze that under Montana, how does it fit? Well, Your Honor, again, we submit that it's not exactly clear if Montana applies, but we say look right to the roadmap that this Court set in Smith. The primary jurisdictional fact is the party status of the nonmember. That's the primary jurisdictional fact. You then look to whether there's some connection to tribal lands. We submit it fits nicely within both of those. But the Philip Morris would say, well, the party status, its party status is an involuntary defendant, in effect, in the tribal court. It doesn't want to be there, so it's involuntarily in tribal court. Well, it may be involuntarily there, but what Smith talks about is you look at whether the party status of the nonmember, that is, whether the nonmember is the plaintiff or the defendant. So whether it doesn't wish to be in tribal court or if it's involuntarily there is really not the issue. May I say this in closing? I know I'm out of time. Smith noted that the tribes have a strong interest in regulating the conduct of their nonmembers. It is part of what it means to be a tribal member. Your Honors, all we're asking for here is that the Yakima Tribal Court be given the first instance to decide whether it has jurisdiction over claims that have been brought against two tribal members and their corporation. This Court will have an opportunity to review that determination at a later date. Well, counsel seems to argue that, oh, if it's very clear, we stay and don't waste the time, don't go down. But that seems to tie your latest argument seems to tie back to the sovereignty and the comity argument. If there was no sovereignty and there was no comity, issues related to it and expression of the legislative intent of the jurisdiction of the courts, I guess we can say, well, they're just another they're not in the picture. But it seems so we're locked into that picture. Would that be the basis of why we should give them a chance? I think absolutely. That's right. I mean, there's got to be a reason. Because, like counsel says, if it's very clear this is a Federal issue and it shouldn't be downed, we just don't give anybody a chance. Right. And this Court determined at Charter that tribal courts, at least for purposes of exhaustion, can grapple with the jurisdictional question regarding a Federal statutory claim. Thank you. Your Honors, thank you. You may have, yes, you may have a minute for rebuttal, Shirley. Thank you, Your Honor. Just briefly, in the Stockwest case, the Court noted that it could not resolve the issue about the locus of the conduct without deciding whether or not tribal law would incorporate a principle of the restatement of conflict. So it actually said that that issue could turn on an issue of tribal law. That's on page 920 of the decision. I think that's very different from this case, where Federal law is clear, and we do not concede that the tort took place on the reservation. Federal law is clear that the injury and the tort of passing off occurs where the passing off occurs. And so we're talking about passing off nationwide, in New York, on the Internet, and there can't be tribal court jurisdiction. What if we were to conclude that the law is somewhat unclear, but there are no factual questions that need to be resolved, and we were to conclude that there is tribal court jurisdiction? Should we just go ahead and say that and be done with it? I think that you have to – I'd like to take another chance. I mean, I've just flipped it on you. Well, I'd like to have the opportunity to explain why, just very briefly, in Hicks, if you look at page 369 of the decision, it says that we added a broader exception in Strait. And then it says, though this exception, too, is technically inapplicable, the reasoning behind it is not. Since it is clear, as we have discussed, the tribal courts lack jurisdiction over State officials, et cetera, adherence to the tribal exhaustion procedure in such case would serve no purpose other than delay. And again, in the Box case, because of the – I'm not sure. I think you can say yes or no. If we conclude that despite the fact that the legal questions are somewhat complicated and the answer is not very clear, but that this is purely a legal question, I guess you've told us that we can go ahead and decide it. Yes. Which means, I guess, we can decide that there is jurisdiction in the tribal court. Boom. It's done, right? We can do that? That's your argument. If you could conclude as a matter of law, based on this record, that there is tribal court jurisdiction, then you could do that. If you conclude that there isn't, then you could. If you think that there are other issues, there actually have been cases in this Court in which the Court has allowed discovery in that for determining the exhaustion issue, in the Burlington Northern v. My question was premised on there are no outstanding facts, so this is relevant to jurisdiction. Right. I think Hicks and the Box and the other cases say that you resolve the issue and then you determine whether or not jurisdiction can be determined. Now, if it can, then there's no point in exhaustion, because then it's just delay. And then, Judge Brunetti, I would refer you to page 1136 of the Smith decision, which very clearly states the holding that, as a plaintiff, Smith chose to appear in tribal court, Smith could and did consent to the civil jurisdiction of the tribe's courts, and that's very different from this case. Thank you very much, Your Honor. Thank you. I think both counsel, for your arguments, very helpful, and the briefing was also very well done and helpful. The case of Philip Morris v. King Mountain is submitted. All rise. This court is adjourned. The case   Morris v. King Mountain is the case of    King Mountain is a case
judges: Brunetti, McKeown, W. Fletcher